**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

**FARUQI & FARUQI, LLP**
Lisa T. Omoto (SBN 303830)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
Email: lomoto@faruqilaw.com

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

CHARLES KARPINSKI, on behalf of himself and all others similarly situated,

Plaintiff,

v.

HANDI-FOIL CORP., a corporation; and HFA, INC., a corporation,

Defendants.

Case No: 2:26-cv-06981-GW-AS

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Violation of California Consumers Legal Remedies Act
2. Violation of California False Advertising Law
3. Violation of California Unfair Competition Law
4. Breach of Express Warranty (Cal. Com. Code § 2313)
5. Breach of Implied Warranty (Cal. Com. Code § 2314)
6. Intentional Misrepresentation

**DEMAND FOR JURY TRIAL**

Plaintiff Charles Karpinski ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendants Handi-Foil Corp. and HFA, Inc. (collectively, "Handi-Foil" or "Defendants") based on Handi-Foil's false and deceptive advertising and labeling regarding its aluminum pans. Plaintiff makes the following allegations based on the investigation of his counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## INTRODUCTION

1. During the statute of limitations period, Handi-Foil has falsely and deceptively marketed, labeled, advertised, distributed, and sold its aluminum pans as Made in the USA. These products include, *inter alia*, the following Handi-Foil aluminum pans: Heavy Duty Containers, King Roaster® Pans, Meal Prep Pans, Cook-N-Carry® Lidded Products, High-End Bakeware, iCHEF® Upscale Lidded Bakeware, BBQ Basics®, CrispBake® Dual Layer Insulated Bakeware, Seasonal, and FunColors® Bakeware (collectively, the "Class Products").[1] Although these products vary in size and shape, and some have lids, fundamentally they are all simple pans made nearly entirely out of foreign-sourced and manufactured aluminum.[2]

2. The consumer-facing front label of the Class Products' packaging has an unqualified and unequivocal representation that the pans are "Made in" accompanied by an image of the American flag or "MADE IN THE USA" accompanied by an image of the American flag (collectively, the "*Made in USA Claim*").

[1] Handi-Foil's commercial products (e.g., products sold to restaurants, caterers, businesses, etc.) are not at issue.

[2] Exemplary product images are set forth *infra* ¶ 12.

3. Reasonable consumers believe, based on the *Made in USA Claim*, that the Class Products are not just assembled in the United States, but that they are made with domestic components and materials. However, the Class Products are substantially comprised of foreign-made and sourced components and materials, including foreign-made and imported aluminum coils and the underlying aluminum materials (bauxite and alumina), rendering the *Made in USA Claim* false and deceptive.

4. Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Class Products during the statute of limitations period (beginning four years prior to the filing of the original complaint on May 15, 2026), for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, breach of express and implied warranty (Cal. Com. Code §§ 2313-2314), and intentional misrepresentation (i.e., common law fraud).

## **JURISDICTION AND VENUE**

5. Plaintiff takes no position on subject matter jurisdiction. Handi-Foil removed this action and it contends that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). *See* Dkt. No. 1. ("Notice of Removal") ¶ 10; *see also Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.").

6. This Court has personal jurisdiction over Handi-Foil because Handi-Foil is qualified to do business in California, and regularly conducts business in California by advertising, distributing, and selling the Class Products throughout the State.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims, including his purchase of a Handi-Foil product, occurred in this District.

**PLAINTIFF**

8. Plaintiff has purchased several Class Products over the years from grocery stores in the Studio City, California area. Most recently, in or around July 2025, Plaintiff purchased several "Cook-N-Carry®" lidded pans, at Von's in Studio City, California for a Fourth of July barbecue. Plaintiff saw and relied on the *Made in USA Claim* in making these purchases. More specifically, Plaintiff reasonably believed, based on the *Made in USA Claim*, that he was buying a pan that was made in the United States with domestic materials. This belief was an important part of his decision to purchase the aluminum pans. Thereafter, Plaintiff discovered that Handi-Foil breached its warranty and representation because the Class Products, including the "Cook-N-Carry®" lidded pans that he purchased in July 2025, were and are substantially made with imported materials, such as the aluminum. Plaintiff would not have purchased the Class Products, or would have paid less for them, had he known the truth. Thus, Plaintiff has suffered injury in fact and lost money as a result of Handi-Foil's misleading, false, unfair, and deceptive practices.

9. Although Plaintiff currently believes that the Class Products are not made in the United States, he cannot trust any of Handi-Foil's representations, and he lacks personal knowledge as to the specific conditions under which Handi-Foil sources materials and components for the Class Products. Therefore, even though Plaintiff would like to continue purchasing the Class Products, Plaintiff will refrain from doing so for the time being. This is a tangible and ongoing harm to Plaintiff that cannot be rectified absent an injunction. Class members will also continue to purchase the Class Products, reasonably but incorrectly believing that they are buying American made pans, based on the unlawful conduct alleged herein.

**DEFENDANTS**

10. Defendant Handi-Foil Corp., directly and/or through its agents, has marketed, advertised, and sold the Class Products throughout the State of California at all times during the statute of limitations period.

11. Defendant HFA, Inc., a/k/a "Handi-foil of America" is an affiliate of Defendant Handi-Foil Corp. At all relevant times, the two companies have operated as an integrated enterprise. Among other things, they share the same principal address of 135 E. Hintz Road, Wheeling, IL 60090, and the president, secretary, director, and registered agent of both Handi-Foil Corporation and HFA, Inc. are members of the Sarnoff family – Norton Sarnoff, Brad Sarnoff, and David Sarnoff. Further, Raj Patel has served as the Chief Operating Officer of both Handi-Foil Corporation and HFA, Inc. while Peter Perkins has served as the Chief Financial Officer of both companies. Defendants also share the same attorneys in this litigation. *See* Dkt. No. 18.

12. Although HFA Inc. manufactures the Class Products that Handi-Foil sells to retailers, it is also directly or indirectly involved in the labeling and advertising of the products. Specifically, HFA Inc.'s corporate officers, including David Sarnoff (the President of Handi-Foil and Secretary of HFA, Inc.), have the final right of approval regarding the substance and design of Handi-Foil's retail products and labels. In other words, a corporate officer of HFA, Inc. is the ultimate decision-maker over the Class Products' label claims, including the *Made in USA Claim* at issue here.[3]

---

[3] *See Osdoby v. Handi-Foil Corp.*, No. 2:22-cv-04199-NG-JMW, Dkt. No. 65-6, p. 14 (Interrogatory Response: stating that Handi-Foil's Marketing Department and Operations Department are responsible for the marketing and labeling of Handi-Foil products, but that "David Sarnoff has the final right of approval regarding the substance and design of Handi-Foil's retail foil pan and container labels.").

13. Accordingly, Defendants Hand-Foil Corp. and HFA, Inc. are jointly responsible for the false advertising alleged herein.

## FACTUAL ALLEGATIONS

### A. Handi-Foil Makes Made in USA Claim on All Class Products

14. The Class Products are sold throughout the State of California by third-party retailers such as Walmart, Amazon, and grocery stores like Ralphs, Gelson's, and Vons, both in brick-and-mortar stores and via e-commerce websites. Exemplar photographs of the Class Products are depicted below:







Ralphs
Shop
Save
Pickup & Delivery
Services
Pharmacy & He
Pickup at Old Ranch Town Center
12470 Seal Beach Blvd
Home > Kitchen > Bakeware > Handi-foil® Eco-Foil® Pasta Disposable Pan
MADE IN THE USA
handi-foil
Giant Pasta Pan


VONS
600 E Broadway
Hours & info
Search products
Fresh
Pantry
Beverages
Frozen
Household
Recipes
Shop more
Back to School
Categories
Paper, Cleaning & Home
Kitchen Accessories
Ovenware - Foil
Edy's
Deliciously scooped Shop now
Handi Foil Giant Meal Prep Pans W Lids - 2 CT
2 ct
3
$9.99
Details
Kosher
Learn more about dietary restrictions
13-1/2 in. x 9-5/8 in. x 2-3/4 in. (34.3 cm x 24.4 cm x 7.0 cm). Folded lids inside. www.handi-foil.com. www.eco-foilpans.com. Made of 100% recycled aluminum eco-foil. For more info on recycling visit www.eco-foilpans.com. Rinse & recycle. Made in the USA.
More
MADE IN THE USA
FOLDED LIDS INSIDE
2 PACK
handi-foil
2 Giant Meal Prep Pans with Board Lids

15. As evident from the above images, the *Made in USA Claim* is prominently displayed in the same manner (e.g., it always contains the statement "Made in" or "Made in the USA" along with the American flag) on the Class Products' front outer packaging.

16. In addition, Handi-Foil makes a general representation that its entire line of products is "Made in America" or "American Made" in search terms and on its website:









### B. Handi-Foil's *Made in USA Claim* Leads Reasonable Consumers to Believe That the Class Products Contain Components That Are All Sourced in the United States, Processed in the United States, and Assembled in the United States

17. A company cannot make an unqualified Made in the USA claim unless: (1) the final assembly or processing of the product occurs in the United States, (2) all significant processing that goes into the product occurs in the United States, and (3) all or virtually all ingredients or components of the product are made and sourced in the United States. 16 C.F.R. § 323.2 ("Made in USA Labeling Rule"); *see also Complying with the Made in USA Standard*, p.4 ("Manufacturers and marketers should not indicate, either expressly or implicitly, that a whole product line is of U.S. origin ["Our products are made in USA"] when only some products in the product line are made in the U.S. according to the 'all or virtually all' standard."). As alleged herein, the components of the Class Products are not "all or virtually all" made and sourced in the U.S.

18. The unqualified statement "Made in USA" and "Made in the USA" conveys the unequivocal message to consumers that the Class products are Made in the USA. The likelihood of deception of this statement is bolstered by the adjacent image of the American flag. Federal Trade Commission, *Complying with the Made in USA Standard*, p. 3 ("Depending on the context, U.S. symbols or geographic references [for example, U.S. flags, outlines of U.S. maps, or references to U.S. locations of headquarters or factories] may convey a claim of U.S. origin either by themselves, or in conjunction with other phrases or images").

19. The *Made in USA Claim* is unqualified because Handi-Foil does not disclose anywhere on the Class Products' visible packaging that they are made with foreign-made and sourced materials, including foreign-made aluminum coils (which are made overseas from foreign-sourced bauxite), as described in more detail below.

20. A reasonable consumer is likely to believe that the Class Products are made entirely from American materials and manufactured in the U.S. based on the *Made in USA Claim*.

**C. The *Made in USA Claim* is False and Deceptive Because the Aluminum Coils, which are the Guts of the Class Products, are Made Overseas**

21. The primary input Handi-Foil uses to manufacture the Class Products is aluminum roll coils, which are large-scale strips of thick aluminum that have been formed into coils, each weighing thousands of pounds. Handi-Foil does not make these aluminum roll coils in house but instead purchases them from Gränges Americas, Inc. ("Gränges") and Novelis Corporation ("Novelis").

22. Aluminum roll coils are made from primary aluminum and/or recycled aluminum. The process of creating aluminum roll coil overseas is a multi-billion-dollar industry. In 2026, the global aluminum coil market was estimated to be valued at $95.42 billion in 2026.[4]

23. To create primary aluminum roll coils, a powder-like substance called alumina is extracted from bauxite, a naturally occurring sedimentary rock. Alumina then undergoes many steps of refining—melting, alloying, casting, rolling, annealing, slitting, and coating—before it becomes aluminum roll coil. This entire manufacturing process occurs abroad.

24. The aluminum coils are not raw materials; they are a final finished product that constitute the primary part, if not the entirety, of the Class Products. Put differently, the bauxite is a raw material that must be extracted from the earth through strip mining. The bauxite is then substantially transformed into alumina, via the following steps:

---

[4] https://www.businessresearchinsights.com/market-reports/aluminum-coils-market-108194 (last accessed October 9, 2026).

- Wet grinding of the bauxite ore in rod mills, ball mills, or semiautogenous grinding mills to produce fine slurry.
- Digestion of the slurry by caustic soda (NaOH) at strengths exceeding 170 g/L in vessels under pressure at temperatures ranging from 145 to 265°C depending on the type of bauxite being processed.
- Separation and washing of insoluble residues (termed "sand and mud") from the process solution (termed "green liquor"). Residues are stored in residue drying areas.
- Crystallization (precipitation) of aluminum trihydrate from the sodium aluminate (NaAlO2) of green liquor, leaving "spent liquor" containing primarily caustic soda to be returned to digestion.
- Calcination of the aluminum trihydrate crystals at approximately 1000°C, driving off water molecules and leaving the final product of anhydrous alumina.[5]




[5] https://pmc.ncbi.nlm.nih.gov/articles/PMC4131932/pdf/joem-56-s12.pdf

Finally, the alumina is substantially transformed into aluminum via a complex refining process, known as the Hall-Héroult process, which is visually summarized below.[6]




25. This entire complex process of transforming bauxite into primary aluminum coils is done overseas. Indeed, none of the top 20 alumina refineries in the world are in the United States. Further, since the 1950s, bauxite deposits in U.S. mines have been too low in aluminum content to be competitive with foreign sources. The last year in which any bauxite was mined within the United States for aluminum metal was 1982. It was from a single mine in Alabama. Given bauxite's unavailability in the United States since 1982, contemporary primary aluminum is necessarily foreign-derived.

26. Handi-Foil's own depiction of the process of transforming bauxite into aluminum coil rolls at a high level demonstrates the magnitude of the overseas manufacturing in visual form:[7]

---

[6] https://pmc.ncbi.nlm.nih.gov/articles/PMC4131935/ (last accessed October 9, 2026).

[7] Excerpts from Defendants' demonstrative exhibit from September 24, 2026 hearing in this case.




27. To be clear, Plaintiff disputes Handi-Foil’s statement in the caption “Admittedly Sourced Domestically.” As alleged herein, Handi-Foil does not source primary aluminum coil rolls domestically. It appears that Handi-Foil is referring to aluminum coils made entirely from recycled aluminum based on the statement “Scrap from Coils ***Imported*** by HFA” (emphasis added). In some cases, HFA Inc. sells scrap (leftover aluminum from its pressings) to Gränges and Novelis, to produce recycled aluminum in the U.S., which Handi-Foil then purchases. In other words, Handi-Foil’s has engaged in a circular deal with Gränges and Novelis. But as alleged herein, the recycled aluminum is foreign-derived, and Handi-Foil’s statement that HFA, Inc. “imports” the aluminum coils that yield the scraps that go into the recycled aluminum is an acknowledgment of this. Ultimately, this image illustrates the transformative processes of turning bauxite rock into useable aluminum coil rolls, all of which occur overseas.

28. To create recycled aluminum, coil suppliers melt down post-consumer scrap aluminum and post-industrial scrap aluminum into molten liquid aluminum that then undergoes the remaining steps in the refining process.

29. Recycled aluminum also contains foreign-derived aluminum, both because of the decades of bauxite's unavailability, and because both domestic and foreign coil suppliers re-incorporated primary aluminum into their recycled aluminum stock through the scrap process.

30. The scrap aluminum used by domestic coil suppliers such as Gränges and Novelis consists of both post-consumer scrap aluminum and post-industrial scrap aluminum from their customers (including HFA, Inc.). And a significant portion of that scrap was necessarily made from foreign-derived aluminum because (a) domestic aluminum is not currently available in the United States and has not been for decades, and (b) domestic coil suppliers utilize imported aluminum and primary aluminum to manufacture coils for customers such as HFA, Inc. Thus, not only is the domestic coil suppliers' stock of recycled aluminum predominantly foreign-derived, but foreign-derived aluminum and primary aluminum (which is necessarily foreign-derived) is continuously incorporated (and re-incorporated) back into it.

31. Thus, Handi-Foil's *Made in USA Claim* is false and deceptive as to the reasonable consumer in the context of consumer protection laws. *See*, *e.g.*, *Banks v. R.C. Bigelow, Inc.*, No. 2:20-cv-06208-SVW (RAOx), 2024 WL 3330554, at *4-5 (C.D. Cal. Jul. 8, 2024) (granting summary judgment to plaintiffs on falsity of made in USA claim because the tea, which was the guts of the product, was processed abroad);[8] *Washington v. Reynolds Consumer Prods., LLC*, No. 24-cv-02327 (ALC),

---

[8] There, the tea was not raw material because the tea underwent processing (e.g., cutting, drying, oxidizing) overseas. *Id.* at *3-5. Here, the aluminum coil rolls are

2025 WL 673615 (S.D.N.Y. Mar. 3, 2025) (allegations that foreign-sourced and made bauxite used to produce aluminum foil are sufficient to state claims under New York consumer protection laws).

### D. Handi-Foil Imports a Substantial Amount of Foreign-Made Aluminum Roll Coils

32. Handi-Foil's knowledge that its products are not "Made in the USA" is further evidenced by the fact that it imports a substantial amount of wholly-made aluminum roll coils that are indirectly used to make the Class Products. Within the last year, HFA has imported hundreds of thousands of pounds of rolled aluminum used to make the pans, as evident from, *inter alia*, publicly available import records:[9]

| PRODUCT DESCRIPTION | IMPORTER | ARRIVAL DA | GROSS WEIGHT (LB) | GROSS WEIGHT (KG) | FOREIGN PORT |
|---|---|---|---|---|---|
| 97,5 MI - 50-1837 GLBFLAT | HANDI-FOIL ALUMINUM | 02/04/2025 | 18929 | 8604 | Sao Paulo |
| 18 PACKAGES 18 PALLETS COLD ROLLED ALUMINIUM FOIL NET WEIGHT 21,045.00 KG HTS CODE 76071119 | HANDI-FOIL ALUMINUM | 12/31/2024 | 49592 | 22542 | Izmit |
| COLD ROLLED ALUMINIUM FOIL 18 PALLETS COLD ROLLED ALUMINIUM FOIL NET WEIGHT 19,247.00 KG HTS CODE 760 | HANDI-FOIL ALUMINUM | 10/25/2024 | 89586 | 40721 | Izmit |
| FOIL HOUSEHOLD INVOICE NO: 95295332 NET WEIGHT: 5.721 KGS COMMODITY CODE : 76071119 / FOIL PRELUBRICAT | HANDI-FOIL ALUMINUM | 10/08/2024 | 24886 | 11312 | Piraeus |
| FOIL HOUSEHOLD INVOICE NO: 95292851 NET WEIGHT: 18.077 KG COMMODITY CODE : 76071119 | HANDI-FOIL ALUMINUM | 08/19/2024 | 51136 | 23244 | Piraeus |
| FOIL HOUSEHOLD INVOICE NO 95292849 NET WEIGHT: 14.013 KG COMMODITY CODE : 76071119 | HANDI-FOIL ALUMINUM | 08/19/2024 | 37838 | 17199 | Piraeus |
| FOIL HOUSEHOLD INVOICE NO: 95292850 NET WEIGHT: 17.657 KG COMMODITY CODE : 76071119 | HANDI-FOIL ALUMINUM | 08/19/2024 | 50064 | 22893 | Piraeus |

| | | | | |
|---|---|---|---|---|
| 16 PACKAGES 16 PALLETS COLD ROLLED ALUMINIUM FOIL NET WEIGHT 18,811.00 KG HTS CODE 76071119 | HANDI-FOIL | 05/02/2025 | 43037 | 19835 Izmit |
| PAPER LEAD | HANDI-FOIL CORP | [illegible] | [illegible] | [illegible] |
| PAPER LEAD | HANDI-FOIL CORP | 04/27/2025 | 42110 | 19141 Nhava Sheva |
| PAPER LEAD | HANDI-FOIL CORP | 04/16/2025 | 42737 | 19426 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 04/07/2025 | 42484 | 19311 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 03/16/2025 | 42328 | 19240 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 03/10/2025 | 84605 | 38457 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 03/06/2025 | 42328 | 19240 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 02/26/2025 | 42275 | 19216 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 02/21/2025 | 42513 | 19324 Nhava Sheva |
| PAPER BOARD LAMINTED LIDS PAPER BOARD LAMINTED LIDS | HANDI-FOIL CORP | 02/08/2025 | 84538 | 38427 Nhava Sheva |
| 97,5 MI - 50-1837 GLBFLAT | HANDI-FOIL ALUMINUM | 02/04/2025 | 18929 | 8604 Sao Paulo |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 14 PACKAGES 14 PALLETS 14 PALLETS COLD ROLLED ALUMINIUM FOIL NET WEIGHT 17,580.00 KG HTS CODE 76071119 | HANDI-FOIL | 01/14/2025 | 41171 | 18714 Izmit |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 18 PACKAGES 18 PALLETS COLD ROLLED ALUMINIUM FOIL NET WEIGHT 21,045.00 KG HTS CODE 76071119 | HANDI-FOIL ALUMINUM | 12/31/2024 | 49582 | 22542 Izmit |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 7200 PACKAGES ONLYPAPER BOARD LAMINATED LIDS7 ROUND LIDS (PFG)2047)-500PFG PFG FOIL LMNTD BRD LID 2047-QTY | HANDI-FOIL CORP | 12/10/2024 | 85052 | 38660 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 12/06/2024 | 84584 | 38452 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS PAPER BOARD LAMINATED LIDS PAPER BOARD LAMINATED LIDS PAPER BOARD LAMINATED | HANDI-FOIL CORP | 12/03/2024 | 168650 | 76659 Nhava Sheva |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| ALUMINIUM 21 PALLETS COLD ROLLED ALUMINIUM FOIL NET WEIGHT 18,484.00 KG HTS CODE 76071119 ALUMINIUM 16 PC | HANDI-FOIL | 11/19/2024 | 93309 | 42413 Izmit |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| PAPER BOARD LAMINATED LIDS / PAPER BOARD LAMINATED LIDS / PAPER BOARD LAMINATED LIDS / PAPER BOARD LAMINA | HANDI-FOIL CORP | 10/31/2024 | 127194 | 57861 Nhava Sheva |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| COLD ROLLED ALUMINIUM FOIL 18 PALLETS COLD ROLLED ALUMINIUM FOIL NET WEIGHT 19,247.00 KG HTS CODE 76071119 | HANDI-FOIL ALUMINUM | 10/25/2024 | 89586 | 40721 Izmit |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| FOIL HOUSEHOLD INVOICE NO: 95295332 NET WEIGHT: 5.721 KGS COMMODITY CODE : 76071119 / FOIL PRELUBRICATED FO | HANDI-FOIL ALUMINUM | 10/08/2024 | 24886 | 11312 Piraeus |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| PAPER BOARD LAMINATED LIDS PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 09/25/2024 | 85138 | 38699 Nhava Sheva |
| PAPER BOARD LIDS 3 COMPARTMENT LIDS4045L-500 FL LMNT BRD LD 4045 3945 PAPER BOARD LIDS 3 COMPARTMENT LIDS4 | HANDI-FOIL CORP | 09/04/2024 | 84933 | 38606 Nhava Sheva |
| PAPER BOARD LAMINATED LIDS | HANDI-FOIL CORP | 08/24/2024 | 42328 | 19240 Nhava Sheva |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| FOIL HOUSEHOLD INVOICE NO: 95292851 NET WEIGHT: 18.077 KG COMMODITY CODE : 76071119 | HANDI-FOIL ALUMINUM | 08/19/2024 | 51136 | 23244 Piraeus |
| FOIL HOUSEHOLD INVOICE NO 95292849 NET WEIGHT: 14.013 KG COMMODITY CODE : 76071119 | HANDI-FOIL ALUMINUM | 08/19/2024 | 37838 | 17199 Piraeus |

---

similarly not raw material because extracting bauxite, processing it into alumina, and then refining alumina into aluminum coils is an even more complex and transformative process.

[9] HS CODE 39042200 is the Harmonized System Code for aluminum foil.

33. Specifically, HFA imports aluminum for use in its commercial products business, which does not boast the *Made in USA Claim*. When these commercial aluminum products are made, there is leftover scrap aluminum. This scrap aluminum is sold to domestic suppliers such as Gränges and Novelis who then comingle it with other aluminum and then sell it back to HFA for use in their consumer recycled aluminum products, including the Class Products. In short, Handi-Foil must know that foreign-derived aluminum is ubiquitous within the stock of aluminum that is used to make the Class Products because Handi-Foil itself contributes foreign-derived aluminum into that same stock.

34. Based on the above, all Handi-Foil does domestically is pre-lubricate and "stamp" this foreign-derived aluminum into the shape of the pans. It does not substantially transform the foreign-manufactured aluminum in any respect. The Federal Trade Commission gives contrasting examples of a gold ring and plastic clock radio:

> If the gold in a gold ring is imported, an unqualified Made in USA claim for the ring is deceptive. That's because of the significant value the gold is likely to represent relative to the finished product, and because the gold — an integral component — is only one step back from the finished article. By contrast, consider the plastic in the plastic case of a clock radio otherwise made in the U.S. of U.S.-made components. If the plastic case was made from imported petroleum, a Made in USA claim is likely to be appropriate because the petroleum is far enough removed from the finished product, and is an insignificant part of it as well.

*Complying with the Made in USA Standard*, p.8.

35. Here, the aluminum in the aluminum pans is akin to the gold in the gold ring. Because all Handi-Foil does is lubricate and press foreign-sourced aluminum into pans, it does not substantially transform the product. Moreover, consumers value the aluminum in the Class Products. According to Handi-Foil Corporation's Chief Operations Officer, the primary value of the pans is attributable to the

underlying foreign-derived aluminum, which is "central" to the Class Products' food-related end-use applications (such as baking, barbequing, reheating, storing, and transporting food items) because it is lightweight, durable, and an excellent conductor of heat.[10] In contrast, the petroleum in a clock radio is substantially transformed into plastic, and the primary value of the clock radio is not attributable to the plastic. It is also akin to the tea in *Banks*, 2024 WL 3330554, at *4-5, which were the guts of the tea products.

36. Because the Class Products are not "Made in the USA," as explained above, Handi-Foil's branding, packaging, and advertising of the Class Products was and continues to be false, misleading and deceptive. As the entities responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Class Products, Handi-Foil knew that the *Made in USA Claim* is untruthful and deceptive.

37. Handi-Foil also knew or should have known that Plaintiff and other consumers would rely on its *Made in USA Claim* in purchasing the Class Products, and would therefore reasonably believe that the Class Products are Made in the USA, as described above. Nonetheless, Handi-Foil deceptively advertises the Class Products to exploit consumer sentiment for American goods.

**E. Handi-Foil's *Made in USA Claim* is Material**

38. Consumers prefer to purchase American made products.

39. The importance, or materiality, of American made products to consumers is recognized as a matter of law. *See*, *e.g*., Cal. Bus. & Prof. Code § 17533.7; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327-29 (2011) ("The

[10] Handi-Foil's COO provided this information during his testimony before the United States International Trade Commission in July 2024.

Legislature has recognized the materiality of this representation by specifically outlawing deceptive and fraudulent 'Made in America' representations.").

40. Handi-Foil knows that consumers prefer American made products, which is reflected not only by the prominent on-label advertising, but also by general Made in USA marketing claims made repeatedly on its website. In short, Handi-Foil used the *Made in USA Claim* to differentiate its aluminum pans from the competition, in order to increase sales and inflate the market price of the Class Products.

41. For example, an internal email to sales representatives states: "We are very proud that we make our products in the United States and want to ***ensure our customers are aware***. We are updating our labels to better reflect that our products are Made in the USA." Another email, concerning whether orders had been released for delivery, includes a line that the Handi-Foil CEO "wanted them ASAP for the Made in the USA label."

42. Plaintiff and Class members would have paid less for the Class Products, or they would not have purchased them at all, but for the *Made in USA Claim*. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Class Products have commanded in the market due to the *Made in USA Claim*.[11]

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

[11] Plaintiff does not seek damages for the entire purchase price of the Class Products under any legal theory.

**California Class**
All natural persons who purchased at least one Class Product labeled with the *Made in USA Claim* in the State of California within the applicable statute of limitations period.

**California Consumer Subclass**
All natural persons who purchased at least one Class Product labeled with the *Made in USA Claim* in the State of California, for personal, family, or household purposes, within the applicable statute of limitations period.

44. Excluded from the Classes are the following individuals and/or entities: Handi-Foil and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Handi-Foil has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

45. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

46. Plaintiff is a member of the California Class and the California Consumer Subclass.

47. <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. The Class Products are sold throughout the State of California. The number of individuals who purchased the Class Products during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

48. <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will

predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Handi-Foil misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Class Products;

b. Whether Handi-Foil's use of challenged packaging constituted false or deceptive advertising;

c. Whether Handi-Foil engaged in unfair, unlawful and/or fraudulent business practices;

d. Whether Handi-Foil's unlawful conduct, as alleged herein, was intentional and knowing;

e. Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

f. Whether Handi-Foil is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

49. Handi-Foil has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Handi-Foil's deceptive packaging and advertising of Class Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same deceptive practice, as (a) the packaging of Class Products bears the same material *Made in USA Claim*, and (b) the Class Products do not meet this

representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

50. Superiority: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents the potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

51. Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Handi-Foil's uniform unlawful conduct as alleged herein.

52. Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

53. Handi-Foil has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
**(*For the California Consumer Subclass*)**

54. Plaintiff repeats the allegations contained in paragraphs 1-53 above as if fully set forth herein.

55. Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Handi-Foil pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

56. The Class Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Class Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

57. Cal. Civ. Code § 1770(a)(2) prohibits "misrepresenting the source, sponsorship, approval, or certification of goods or services." By marketing the Class Products with their current packaging, Handi-Foil has represented and continues to represent that the pans were Made in the USA with domestic materials, when they are not. Therefore, Handi-Foil has violated section 1770(a)(2) of the CLRA.

58. Cal. Civ. Code § 1770(a)(4) prohibits "using deceptive representations or designations of geographical origin in connection with goods or services." By marketing the Class Products with their current packaging, Handi-Foil has used deceptive representations and designations of the Class Products' geographical origin (the United States). Therefore, Handi-Foil has violated section 1770(a)(4) of the CLRA.

59. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . . ." By marketing the Class Products with their current packaging, Handi-Foil has represented and continues to represent that the Class Products have characteristics (Made in the USA) that they do not have. Therefore, Handi-Foil has violated section 1770(a)(5) of the CLRA.

60. Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular

style or model, if they are of another." By marketing the Class Products with their current packaging, Handi-Foil has represented and continues to represent that the Class Products are of a particular style (Made in the USA) when they are of another. Therefore, Handi-Foil has violated section 1770(a)(7) of the CLRA.

61. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Class Products with their current packaging, such that a reasonable consumer would believe that the Class Products are Made in the USA, but not intending to sell a product Made in the USA, Handi-Foil has violated section 1770(a)(9) of the CLRA.

62. At all relevant times, Handi-Foil has known or reasonably should have known that the *Made in USA Claim* on the Class Products' packaging is false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on it when purchasing the Class Products. Nonetheless, Handi-Foil persisted in making the *Made in USA Claim* on the Class Products' labels in order to deceive consumers into believing they are buying a genuine American-made product.

63. Plaintiff and members of the California Consumer Subclass have justifiably relied on Handi-Foil's misleading *Made in USA Claim* when purchasing the Class Products. Moreover, based on the materiality of Handi-Foil's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

64. Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Handi-Foil because they would have paid less for the Class Products, or would not have purchased them at all, had they known that the *Made in USA Claim* was untrue.

65. On September 3, 2025, Plaintiff, by and through his counsel, sent a notice and demand letter to Handi-Foil, informing Handi-Foil of his intent to pursue

claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Handi-Foil received this notice and demand letter and refused to rectify the allegations stated in Plaintiff's letter.

66. Because Handi-Foil has failed to rectify or remedy the damages caused after waiting more than the statutorily required 30 days after Handi-Foil received the foregoing notice and demand letter, Plaintiff is timely filing this Complaint for damages, as permitted under Cal. Civ. Code § 1782(d). Plaintiff also requests that this Court enjoin Handi-Foil from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future. Plaintiff also seeks an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

67. Pursuant to section 1780(d) of the Act, attached hereto as **Exhibit A** is an affidavit showing that this action has been commenced in the proper forum.

## SECOND CLAIM FOR RELIEF
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
***(For the Classes)***

68. Plaintiff repeats the allegations contained in paragraphs 1-53 above as if fully set forth herein.

69. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Handi-Foil pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

70. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is

known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

71. The FAL also makes it unlawful for any person, firm, corporation, or association to sell or offer for sale in California any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7.

72. As set forth above, the Class Products are substantially made with foreign-sourced materials, including primary aluminum and underlying bauxite. The aluminum coils constitute the entire Class Product, or at minimum, an "article, unit, or part" of the Class Product within the meaning of Cal. Bus. & Prof. Code § 17533.7. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680, 682 (2006) (holding that component parts of the multi-purpose, multi-component tools at issue were the "significant parts of the tools, why the people buy them" and were the "guts of the tools" and therefore a made in USA claim was false and deceptive as a matter of law under California law).[12]

73. Handi-Foil has represented and continues to represent to the public, including Plaintiff and members of the proposed Classes, through its deceptive

[12] The notion that a product made nearly out of foreign-sourced material would fall outside the ambit of Cal. Bus. & Prof. Code § 17533.7 just because it is exceedingly simple and does not consist of multiple components would lead to an absurd result. In any event, this case does not depend on a specific violation of Cal. Bus. & Prof. Code § 17533.7. Rather, this statute provides a safe harbor defense that a defendant can invoke as an affirmative defense if it can show that the foreign-sourced "article unit or part" constitute no more than 5 or 10% percent of the product's final wholesale value. In other words, the proposition that foreign material does not constitute an "article unit or part" of merchandise is irreconcilable with a safe harbor defense.

packaging, that the Class Products are Made in the USA. Because Handi-Foil has disseminated misleading information regarding Class Products, and Handi-Foil knows, knew, or should have known, through the exercise of reasonable care, that the *Made in USA Claim* is misleading, Handi-Foil has violated the FAL.

74. Cal. Bus. & Prof. Code § 17533.7 permits companies to make an unqualified made in the USA representation on a product that is not 100 percent American-made only in two limited circumstances, known as safe harbor provisions. Neither apply here.

75. First, Cal. Bus. & Prof. Code § 17533.7(b) provides that section 17533.7 shall not apply to:

> "[M]erchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute *not more than 5 percent* of the final wholesale value of the manufactured product."

Cal. Bus. & Prof. Code § 17533.7(b) (emphasis added).

76. Second, Cal. Bus. & Prof. Code § 17533.7(c)(1) provides that section 17533.7 shall not apply if:

> "[T]he manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source"; *and*
>
> "All of the articles, units, or parts of the merchandise obtained from outside the United States constitute not *more than 10 percent* of the final wholesale value of the manufactured product."

Cal. Bus. & Prof. Code § 17533.7(c)(1)(A) and (B) (emphasis added).

77. As alleged herein, the Class Products are labeled Made in USA when the aluminum that is ubiquitous in, and a central component of, them is nearly

entirely made with foreign-derived aluminum.[13] Where, as here, the guts of the product are foreign-sourced, the safe harbor provisions do not apply, or put differently, a defendant is unlikely to prevail on the merits of these affirmative defenses. *See*, *e.g*., *Banks*, 2024 WL 1513013 (the defendant waived the safe harbor provisions because it could not invoke them as a defense based on the fact that the foreign-sourced tea was the guts of the product); *Kaufmann v. Nordic Ware, Inc*., No. 25-cv-1379 (ECT/DLM), 2025 WL 3754252, at *11-12 (D. Minn. Dec. 29, 2025) (allegations [that all, or virtually all of the aluminum and bauxite used to make aluminum pans was produced overseas] "make it plausible that foreign-sourced aluminum constitutes more than 10 percent of the final wholesale value because the bakeware's 'primary' and 'fundamental' component is aluminum. The California claims are not barred by the safe-harbor doctrine.").

78. Moreover, the minimal processing that occurs in the United States only accounts for approximately 20% of the Class Products' cost, while approximately 80% of their cost is attributable to the foreign aluminum, as reflected in the following chart from a report entitled, *Disposable Aluminum Containers, Pans, Trays, and Lids from China*, prepared by the U.S. International Trade Commission, dated April 2025, based on information provided by eight manufacturers, including Hand-Foil.[14]

///

///

///

---

[13] *See Osdoby v. Handi-Foil Corp.*, No. 22-cv-4199 (NG) (JMW), 2026 WL 388606, at *3 (E.D.N.Y. Feb. 12, 2026) (summary judgment decision finding that "it remains indisputable that foreign-derived aluminum is ubiquitous even within domestic coil suppliers' stock of recycled aluminum.").

[14] https://www.usitc.gov/publications/701_731/pub5611.pdf (last accessed October 9, 2026).

**Table 6.1 (Continued) Aluminum containers: U.S. producers' results of operations, by item and period**

Shares in percent; unit values in dollars per pound; count in number of firms reporting

| Item | Measure | 2022 | 2023 | 2024 |
|---|---|---|---|---|
| COGS: Raw materials | Share | 81.9 | 80.5 | 79.9 |
| COGS: Direct labor | Share | 7.4 | 7.7 | 7.8 |
| COGS: Other factory | Share | 10.7 | 11.8 | 12.3 |
| COGS: Total | Share | 100.0 | 100.0 | 100.0 |
| Total net sales | Unit value | 4.87 | 4.69 | 4.51 |
| COGS: Raw materials | Unit value | 3.29 | 3.13 | 3.05 |
| COGS: Direct labor | Unit value | 0.30 | 0.30 | 0.30 |
| COGS: Other factory | Unit value | 0.43 | 0.46 | 0.47 |
| COGS: Less scrap revenue | Unit value | 0.19 | 0.14 | 0.14 |
| COGS: Total | Unit value | 3.83 | 3.75 | 3.68 |
| Gross profit or (loss) | Unit value | 1.04 | 0.94 | 0.84 |
| SG&A expenses | Unit value | 0.39 | 0.46 | 0.48 |
| Operating income or (loss) | Unit value | 0.65 | 0.49 | 0.35 |
| Net income or (loss) | Unit value | 0.65 | 0.50 | 0.36 |
| Operating losses | Count | *** | *** | *** |
| Net losses | Count | *** | *** | *** |
| Data | Count | 8 | 8 | 8 |

Source: Compiled from data submitted in response to Commission questionnaires.

Note: Revenue from the sale of aluminum scrap is treated as an offset (reduction) to COGS. Shares represent the share of COGS before scrap revenue is deducted. Shares and ratios shown as "0.0" represent values greater than zero, but less than "0.05" percent. Zeroes, null values, and undefined calculations are suppressed and shown as "---".

79. Notably, this chart is heavily weighted based on Handi-Foil's own data, as Handi-Foil has a 75 percent share of the retail market and is the largest U.S. manufacturer of aluminum disposable containers.

80. In sum, the aluminum in the Class Products comprises well over 10% of the Class Products' final wholesale value, and neither of the safe harbor provisions to Cal. Bus. & Prof. Code § 17533.7 apply.

81. As a result of Handi-Foil's false advertising, Handi-Foil has and continues to unlawfully obtain money from Plaintiff and members of both Classes. Plaintiff therefore requests that the Court cause Handi-Foil to restore this fraudulently obtained money to them and members of the proposed Classes, to disgorge the profits Handi-Foil made on these transactions, and to enjoin Handi-Foil from violating the FAL or violating it in the same manner in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

**<u>THIRD CLAIM FOR RELIEF</u>**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200*, et seq.***
**(*For the Classes*)**

82. Plaintiff repeats the allegations contained in paragraphs 1-53 above as if fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Handi-Foil pursuant to Cal. Bus. & Prof. Code § 17200, *et seq*.

84. The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

85. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Handi-Foil's false and misleading advertising of Class Products was and continues to be "unlawful" because it violates, *inter alia*, Cal. Bus. & Prof. Code § 17533.7, the CLRA, the FAL, federal regulations (16 C.F.R. § 323.2), and other applicable laws as alleged herein. As a result of Handi-Foil's unlawful business acts and practices, Handi-Foil has unlawfully obtained money from Plaintiff, and members of the proposed Classes.

86. Under the UCL, a business act or practice is "unfair" if the Handi-Foil's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Handi-Foil's conduct was and continues to be of no benefit to purchasers of the Class Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers into believing the Class Products are Made in the USA, when they are substantially made of foreign-sourced and manufactured materials, is of no benefit to consumers. Therefore, Handi-Foil's

conduct was and continues to be "unfair." As a result of Handi-Foil's unfair business acts and practices, Handi-Foil has and continues to unfairly obtain money from Plaintiff, and members of the proposed Classes.

87. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Handi-Foil's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Class Products are made in the USA, when they are substantially made of foreign-sourced and manufactured materials and components. Because Handi-Foil misled Plaintiff and members of both Classes, Handi-Foil's conduct was "fraudulent." As a result of Handi-Foil's fraudulent business acts and practices, Handi-Foil has and continues to fraudulently obtain money from Plaintiff and members of the proposed Classes.

88. Plaintiff requests that the Court cause Handi-Foil to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed Classes, to disgorge the profits Handi-Foil made on these transactions, and to enjoin Handi-Foil from violating the UCL or violating it in the same manner in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

## FOURTH CLAIM FOR RELIEF
**Breach of Express Warranty**
**California Commercial Code § 2313**
**(*For the Classes*)**

89. Plaintiff repeats the allegations contained in paragraphs 1-53 above as if fully set forth herein.

90. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Handi-Foil pursuant to California Commercial Code § 2313.

91. California's express warranty statute provides that "(a) Any affirmation

of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

92. Handi-Foil has expressly warranted on the Class Products' packaging that they are Made in the USA through the *Made in USA Claim*.

93. This representation about the Class Products is: (a) an affirmation of fact or promise made by Handi-Foil to consumers that Class Products are Made in the USA; (b) became part of the basis of the bargain to purchase the Class Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Class Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Class Products is a description of goods which were made as part of the basis of the bargain to purchase the Class Products, and which created an express warranty that the Class Products would conform to the product description.

94. Plaintiff and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Class Products did in fact conform to those warranties.

95. Handi-Foil has breached the express warranties made to Plaintiff and members of the proposed Classes by failing to manufacture the Class Products in accordance with the *Made in USA Claim*, as expressly warranted on the packaging.

96. Plaintiff and members of the proposed Classes paid a premium price for the Class Products but did not obtain the full value of the Class Products as represented. If Plaintiff and members of the proposed Classes had known of the true nature of the Class Products, they would not have been willing to pay the premium price charged in the market. As a result, Plaintiff and members of the Classes

suffered injury and deserve to recover all damages afforded under the law.

97. On September 3, 2025, Plaintiff, by and through his counsel, sent a notice and demand letter to Handi-Foil, informing Handi-Foil of his intent to pursue claims for breach of express warranty and the factual basis for those claims. This letter was sent within a reasonable time of when Plaintiff first discovered the information giving rise to his claims.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**Breach of Implied Warranty**
**California Commercial Code § 2314**
**(*For the Classes*)**

98. Plaintiff repeats the allegations contained in paragraphs 1-53 above as if fully set forth herein.

99. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Handi-Foil pursuant to California Commercial Code § 2314.

100. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

101. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

102. Handi-Foil is a merchant with respect to the sale of the Class Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Class Products to California consumers.

103. By advertising the Class Products with their current packaging, Handi-

Foil made an implied promise that the Class Products are Made in the USA. The Class Products do not, however, "conform to the promises . . . made on the container or label" because they are substantially made of foreign-sourced and/or manufactured materials. Thus, Plaintiff and Class members did not receive the goods as impliedly warranted by Handi-Foil to be merchantable.

104. Therefore, the Products are not merchantable under California law and Handi-Foil has breached its implied warranty of merchantability with respect to the Class Products.

105. If Plaintiff and Class members had known that the Products were not made in the USA with domestic components, they would not have been willing to pay the premium price associated with them or would not have purchased them at all. Therefore, as a direct and/or indirect result of Handi-Foil's breach, Plaintiff and Class members have suffered injury and deserve to recover all damages afforded under the law.

106. On September 3, 2025, Plaintiff, by and through his counsel, sent a notice and demand letter to Handi-Foil, informing Handi-Foil of his intent to pursue claims for breach of implied warranty and the factual basis for those claims. This letter was sent within a reasonable time of when Plaintiff first discovered the information giving rise to his claims.

## **SIXTH CLAIM FOR RELIEF**
### **Intentional Misrepresentation**
**(*for the Classes*)**

107. Plaintiff repeats the allegations contained in paragraphs 1-53 above as if fully set forth herein.

108. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Handi-Foil.

109. Handi-Foil marketed the Class Products in a manner indicating that they are made in the USA, when they are substantially made of foreign-sourced and manufactured materials and components. Therefore, Handi-Foil has made misrepresentations about the Class Products.

110. The *Made in USA Claim* is material to a reasonable consumer because it relates to the quality and source of the Class Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to the Class Products.

111. At all relevant times, Handi-Foil knew that the *Made in USA Claim* was misleading. Handi-Foil intends for Plaintiff and other consumers to rely on the *Made in USA Claim*, as evidenced by Handi-Foil intentionally and conspicuously placing it on the packaging of the Class Products. This can also be seen in Handi-Foil's marketing campaign, store displays, digital copy, and the claims on its website, which focus on purported American manufacturing of the Class Products. In the alternative, Handi-Foil acted recklessly in making the *Made in USA Claim* without regard to the truth.

112. Plaintiff and members of the proposed Classes have reasonably and justifiably relied on Handi-Foil's intentional misrepresentations (i.e., the *Made in USA Claim*) when purchasing the Class Products, and had the correct facts been known, would not have purchased them at the prices at which they were sold in the market.

113. Therefore, as a direct and proximate result of Handi-Foil's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

///

///

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A. Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B. A declaration that Handi-Foil's actions, as described herein, violate the claims described herein;

C. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Handi-Foil obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including, *inter alia*, an order prohibiting Handi-Foil from engaging in the unlawful act described above;

E. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Handi-Foil's conduct;

F. An award of punitive damages;

G. An award of nominal damages;

H. An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

I. An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

J. For such further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: October 9, 2026

Respectfully submitted,

**THE WAND LAW FIRM, P.C.**

By: /s/ Aubry Wand
Aubry Wand

**FARUQI & FARUQI, LLP**
Lisa T. Omoto

*Attorneys for Plaintiff and the Putative Classes*